Milton H. Jacobs et al. [1] v. Commissioner. Jacobs v. Comm'r
Docket Nos. 48704, 52430-52432, 52464, 52465. 955-167.
United States Tax Court
T.C. Memo 1955-167; 1955 Tax Ct. Memo LEXIS 170; 14 T.C.M. (CCH) 637; T.C.M. (RIA) 55167; June 27, 1955
*170 Edward J. Lawler, Esq., for the petitioners. W. Preston White, Jr., Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: For the years 1948 and 1949, the Commissioner determined deficiencies in income tax, and for 1948 he made additions to the tax under section 291(a) of the 1939 Code, as follows: Deficiency
Sec. 291(a)
Dkt. No.
Petitioner
1948
1949
1948
48704
M. H. Jacobs
$ 1,926.99
$ 1,639.35
$ 96.35
52430
N. S. Jacobs
1,926.99
1,639.35
96.35
52431
E. J. Ochs
1,926.99
1,639.35
96.35
52432
E. S. Jacobs
1,926.99
1,639.35
96.35
52464
E. S. Jacobs
2,258.84
112.95
52465
E. S. & B. R. Jacobs
1,343.22
*171 There is involved a deficiency in income tax for the estate of Arthur Joseph Jacobs, deceased, for the calendar year 1948 in the amount of $1,926.99, plus $96.35 in penalty, and a deficiency for the year 1949 in the amount of $1,639.35, a total of $3,662.29. The respondent is seeking to impose the tax liability of the estate of Arthur Joseph Jacobs, deceased, on Milton H. Jacobs, executor of the estate, and Edward S. Jacobs, Nora S. Jacobs, and Elizabeth J. Ochs, as transferees of the assets of the estate. The parties have agreed that if there is any income tax liability of the estate of Arthur Joseph Jacobs, deceased, then Milton H. Jacobs as executor of such estate, is personally liable for the deficiency under section 3467 of the Revised Statutes of the United States, and Nora S. Jacobs, Edward S. Jacobs, and Elizabeth J. Ochs are liable as transferees of the assets of the estate pursuant to section 311 of the 1939 Code. The petitioners concede that one adjustment of the respondent is correct, namely, that insurance premiums in the amount of $1,245.50 are not deductible in the fiscal year ended March 31, 1949. Findings of Fact The facts which have been stipulated are found *172 according to the stipulation. The stipulation and the attached exhibits are incorporated herein by this reference. The petitioners are residents of Memphis, Tennessee, as was Arthur J. Jacobs prior to his death on July 29, 1951. The income tax returns of all of the parties were filed with the collector for the district of Tennessee. The Lamar Laundry-Cleaners is a partnership engaged in the laundry and dry cleaning business at 1172 Lamar Avenue, Memphis, Tennessee. During the taxable years 1948 and 1949 this partnership was composed of Nora S. Jacobs, Edward S. Jacobs and Arthur J. Jacobs. Beginning on April 1, 1937, and until March 31, 1947, a laundry and dry cleaning business was operated under the name of Lamar Laundry-Cleaners by a partnership composed of Estelle Goodman and Nora S. Jacobs. A partnership agreement under which this business was operated was executed on April 1, 1937, and reads as follows: "April, 1st., 1937 "This agreement made and entered into by and between Nora S. Jacobs and Estelle G. Goodman, both of Shelby Co., Tenn.
WITNESSETH - FIRST - The parties hereto agree to both partners engaging in the Laundry Business at 1172 Lamar Ave. under the trade *173 name of 'LAMAR LAUNDRY.' SECOND - The profits and or losses of the business shall be shared equally by the partners hereto. This contract of partnership shall have a tenure of one year, and shall automatically renew itself, from year to year unless a partner shall notify the other in writing of a desire not to renew sixty days before the expiration of this agreement. In the event of the death of Nora Jacobs, the children of Nora Jacobs shall have the right to buy her interest at it's then book value. In the event of the death of Estelle Goodman, Leo Goodman or any person he may name shall have the right to buy her interest at its then book value. Witness the hands of the parties this day and year above written. "/s/ Estelle Goodman, "/s/ Nora S. Jacobs" On December 4, 1946, Leo Goodman, the husband of Estelle Goodman, died in Memphis, Tennessee. Although Estelle Goodman owned a one-half interest in the laundry partnership, she was not active in the business and relied upon her husband entirely in the management of her interest. On the advice of Abe Plough, a businessman of Memphis, Tennessee, and her brother Leon Gorman, Estelle Goodman decided to withdraw from and terminate *174 the partnership with Nora Jacobs. Shortly after Leo Goodman's death on December 4, 1946, Estelle Goodman met with Abe Plough to discuss her business affairs. It was at this meeting that Plough advised Estelle Goodman to terminate the partnership with Nora Jacobs and to dispose of her interest in the laundry business. At this time, Estelle Goodman instructed Plough, as her representative, to take the steps necessary to terminate the partnership and to handle the disposition of her interest therein. On or about December 15, 1946, Abe Plough met with Nora Jacobs and her husband, Milton H. Jacobs, and advised Nora Jacobs that Estelle Goodman was terminating the partnership with her in accordance with the terms of the agreement dated April 1, 1937. Under the provisions of the partnership agreement, the notice given by Estelle Goodman through her representative, Plough, was that she was withdrawing from and terminating the partnership on March 31, 1947, the end of the current fiscal year of the partnership. The notice of termination was accepted by Nora Jacobs and she did not insist that written notice be given to her regarding the termination of the partnership by Estelle Goodman. *175 After the matter of terminating the partnership on March 31, 1947 was settled, Plough, acting on behalf of Estelle Goodman, then discussed with Edward and Arthur Jacobs the possibility of selling them Estelle Goodman's interest in the business. Both of the Jacobs men had worked in the laundry business for many years and Edward Jacobs had studied the maintenance of laundry equipment and laundry management at Ohio Mechanics Institute in Cincinnati, Ohio. For these reasons, both Edward and Arthur were interested in Plough's proposal and discussed the matter with him at the first meeting of the parties at the Jacobs home. No purchase price was mentioned at this time as neither Edward and Arthur nor Abe Plough had any idea of the value of Estelle Goodman's one-half of the laundry assets. Plough had discussed the problem of valuing Estelle Goodman's interest in this business with Charles Harrelson, the secretary-treasurer of Plough, Inc., and it was decided by them that, inasmuch as the laundry business primarily consisted of fixed assets such as land, buildings and equipment, an appraisal should be made for the purpose of properly valuing Estelle Goodman's interest. Edward and Arthur *176 Jacobs were advised of this decision and they agreed that the assets of the business should be appraised. At the suggestion of Plough, Harrelson contacted Lloyd's Appraisal Company of Detroit, Michigan, to arrange for the appraisal of the Lamar Laundry-Cleaners property. Plough, Inc. had used Lloyd's for its own appraisal work for a number of years and both Plough and Harrelson had been completely satisfied with Lloyd's work. Harrelson was also familiar with the fact that Lloyd's had done a number of laundry appraisals in Memphis, Tennessee, and elsewhere, and it was felt that this company would make a fair and accurate appraisal of the assets of the laundry business. Accordingly, a contract was signed on December 18, 1946 with Lloyd's for the appraisal, which was to be made on or about the first of April, 1947. The appraisal of the assets of Lamar Laundry-Cleaners was made personally by Ben K. Lloyd who has been in the appraisal business since 1916. Lloyd's Appraisal Company specializes in appraising laundry and dry cleaning businesses and printing and allied trades. The appraisal was completed on April 3, 1947. It was based upon a complete detailed description of all fixed assets, *177 the determination of their cost and the computation of depreciation to be deducted to the date of the appraisal. Depreciation on some items ran as high as 90 per cent. The depreciated value arrived at by Ben K. Lloyd is practically identical with what the fair market would be. The appraised value of the fixed assets was $291,812.63. One-half of that appraised value amounted to $145,906.31. The appraised value of one-half of the fixed assets amounting to $145,906.31 was set forth on page 3 of the Bill of Sale executed by Estelle Goodman, Edward S. Jacobs, and Arthur J. Jacobs. The appraisal made by Lloyd's Appraisal Company was a fair and accurate one and the value placed on the fixed assets and buildings was not in excess of what the buildings and equipment were worth at that time. Further negotiations were undertaken between Able Plough and Edward and Arthur Jacobs and after a number of meetings, it was agreed that Estelle Goodman's one-half interest in the partnership assets would be purchased by them for a total consideration of $180,000. This figure was based on the appraisal of the fixed and depreciable assets of the business made by Lloyd's Appraisal Company, reduced by one-half *178 to arrive at the value of Estelle Goodman's one-half interest therein; additional sums were added to the appraised values to cover the land, cash on hand, accounts receivable and other assets. The values placed on the fixed and depreciable assets in the Lloyd's appraisal represented the fair market value on April 1, 1947. Thereafter the books of account of the Estelle Goodman-Nora S. Jacobs partnership were closed out completely and a Federal income tax return for this partnership was filed for the period ending March 31, 1947, and marked "Final Return." It was the expressed intention of Estelle Goodman and of her business adviser, Abe Plough, that this partnership with Nora S. Jacobs be dissolved and terminated on March 31, 1947, and the parties involved did everything necessary to accomplish this purpose. Plough insisted and all of the parties understood that Estelle Goodman was withdrawing from the partnership on this date and that she would incur no liabilities thereafter. The sale of Estelle Goodman's interest in the partnership assets was consummated as of April 1, 1947. At this time, Estelle Goodman, as seller, and Edward S. Jacobs and Arthur J. Jacobs, as buyers, executed *179 a formal Bill of Sale which set out the parties' respective promises and agreements. This instrument provided for a consideration of $180,000, with $30,000 to be paid to Estelle Goodman in cash and the balance to be evidenced by the promissory note of the buyers. The Bill of Sale recited that the sale included all of the seller's interest in the assets and property of Lamar Laundry-Cleaners set out in an appraisal made by Lloyd's Appraisal Company and all other partnership property. A copy of this appraisal was marked Exhibit "1" and attached to the Bill of Sale. A detailed schedule of the valuations placed on the various assets was also included in the Bill of Sale. In this schedule the total of the values placed on the depreciable assets was $145,906.32, which figure is exactly one-half of the total valuation of these assets by Lloyd's Appraisal Company. Title to one-half of the real estate used by the laundry business was conveyed on April 1, 1947 to Edward and Arthur Jacobs by warranty deed from Estelle Goodman. The promissory note in the principal amount of $150,000 given to Estelle Goodman was secured by a trust deed on the property. It was agreed by Nora Jacobs and the purchasers *180 of Estelle Goodman's interest that they should form a new partnership and engage in the laundry and dry-cleaning business under the name of Lamar Laundry-Cleaners. Accordingly, a new partnership agreement was drawn and entered into by Nora S. Jacobs, Edward S. Jacobs and Arthur J. Jacobs, effective April 1, 1947. Nora S. Jacobs contributed her one-half of the assets of the old partnership and Edward and Arthur Jacobs contributed the assets purchased from Estelle Goodman. The Articles of Partnership state that these assets were delivered to the place of business of the new partnership. Complete new books of account were opened by W. D. Marshall, a certified public accountant, for the new partnership consisting of Nora S. Jacobs, Edward S. Jacobs and Arthur J. Jacobs. The depreciable assets contributed to the partnership were set up on the books upon the basis of Lloyd's appraisal. These entries reflected the purchase price paid by Edward S. Jacobs and Arthur J. Jacobs for the depreciable assets purchased from Estelle Goodman. These entries did not result in any increase in the value of the assets contributed by Nora S. Jacobs insofar as tax consequences were concerned. The partnership *181 returns filed for the fiscal years ending March 31, 1948 and March 31, 1949 were prepared from the books of account. Depreciation was claimed in those returns for Edward S. Jacobs and Arthur J. Jacobs on the basis of their cost which was the appraised figure. Depreciation was claimed for Nora S. Jacobs on the basis of her original cost and not on the appraised figure. Gain or loss on the sale of assets or on the junking of certain assets during 1949 was computed on the same basis. On examination of the returns filed for the new partnership, respondent disallowed the portion of the depreciation deduction computed on the cost basis of Edward and Arthur Jacobs and contended that the new partnership was limited to a depreciation deduction computed on Estelle Goodman's basis of the depreciable assets. On this same theory, the respondent disallowed a portion of a loss deduction to the partnership which had arisen from the sale and junking of certain machinery. Milton H. Jacobs was employed as the manager of the laundry business operated by the Estelle Goodman-Nora Jacobs partnership at a salary of approximately $1,000 per month. On April 1, 1947 he was employed by the new partnership *182 composed of Nora, Edward and Arthur Jacobs in the same capacity. He has never been and was not during the taxable periods involved, a partner in the Lamar Laundry-Cleaner business. Opinion The questions to be decided are as follows: (1) Were the petitioners correct in adjusting the basis of one-half of the depreciable assets contributed to the new partnership by Edward and Arthur Jacobs to reflect the purchase price paid by Edward and Arthur Jacobs? (2) Was Milton H. Jacobs, the husband of Nora S. Jacobs, a partner in the Lamar Laundry-Cleaners partnership for the taxable years involved, or was he an employee? The respondent determined that he was a partner and disallowed a deduction to the partnership for salary paid Milton Jacobs in the amount of $12,000 for each of the taxable years. Since the respondent allocated a portion of the partnership earnings to Milton H. Jacobs on the theory that he was a partner, and since Milton H. Jacobs filed a joint return with his wife, Nora S. Jacobs, for the calendar years 1948 and 1949, the determination of this question will not affect the tax liability of the parties in any way. The petitioners contend that Milton H. Jacobs has never been *183 a partner in the Lamar Laundry business, and that he was not a partner during the years involved in this proceeding. The respondent has not filed a brief. We understand, therefore, that he has abandoned his original position under both issues. It is concluded that (1) the partnership existing between Estelle Goodman and Nora S. Jacobs was terminated on March 31, 1947; (2) the sale by Estelle Goodman on April 1, 1947 to Edward S. Jacobs and Arthur J. Jacobs was a valid transfer of the assets set forth in the Bill of Sale and the Warranty Deed; (3) the basis of the assets purchased by Edward S. and Arthur J. Jacobs and contributed on April 1, 1947 to a new partnership consisting of Nora S. Jacobs, Edward S. Jacobs, and Arthur J. Jacobs is the basis in the hands of the transferors, namely the cost thereof; and that (4) Milton H. Jacobs was not a partner during the fiscal years of the partnership ending March 31, 1948 and March 31, 1949 The partnership organized by Estelle Goodman and Nora S. Jacobs on April 1, 1937, was dissolved and terminated in accordance with the terms of the partnership agreement and under the laws of the State of Tennessee. Sections 7870(a), 7870(b), 7868 *184 of Williams Tennessee Code; Manley v. Belew, 190 Tenn. 698 (1950), 231 S.W. (2d) 353. When the old partnership composed of Estelle Goodman and Nora S. Jacobs was dissolved and terminated at the close of business on March 31, 1947, the assets of the partnership, by operation of law, were distributed in kind to Estelle Goodman and Nora S. Jacobs and were then held by them as co-owners. E. T. Renfro Drug Co., 11 T.C. 994, 999, affd. 183 Fed. (2d) 846. On the following day, April 1, 1947, Estelle Goodman sold her entire interest in the old partnership assets to Edward and Arthur Jacobs for the sum of $180,000. The purchase price for these assets was established by an independent appraisal made by Lloyd's Appraisal Company. This company specialized in the appraisal of laundry businesses and the appraiser who prepared the detailed report on Lamar Laundry-Cleaners was a man who had been in this business for thirty-eight years. The total appraised value of the fixed assets of this business was $291,812.63 which represented the fair market value of these assets on April 3, the date of the appraisal. The appraised value of one-half of the fixed assets *185 amounting to $145,906.31 was set forth on page 3 of the Bill of Sale executed by Estelle Goodman, Edward S. Jacobs, and Arthur J. Jacobs. The purchase price paid by the purchasers of Estelle Goodman's interest was considered a fair and reasonable price by all of the parties concerned. This sale was an arm's length transaction between individuals who are not related and the transaction was consummated only after extended negotiations in which Estelle Goodman was represented by Abe Plough, an experienced businessman. In addition to the Bill of Sale executed by the parties to this sale, Estelle Goodman conveyed her undivided interest in the real estate to Edward and Arthur Jacobs by warranty deed dated April 1, 1947. The great bulk of the assets sold on this date consisted of Estelle Goodman's undivided one-half interest in the buildings, equipment, and machinery used in the laundry business and for this reason the conveyance by warranty deed effectively transferred her interest, not only in the real estate, but also in the buildings, equipment, and machinery attached thereto. The assets not transferred by this deed were transferred under the terms of the Bill of Sale. These two instruments *186 show beyond any question that the assets involved here were transferred directly to Edward and Arthur Jacobs by Estelle Goodman subsequent to the dissolution of the partnership between Estelle Goodman and Nora S. Jacobs. It has been shown by clear and convincing evidence that certain assets were transferred from Estelle Goodman to Edward and Arthur Jacobs. This transfer was made upon the consideration of the payment of $180,000. Of this amount, the sum of $145,906.31 was paid for the fixed and depreciable assets transferred. The purchasers were obliged to take as their basis in these assets the cost to them. Section 113(a) of the Internal Revenue Code of 1939. It is held that the basis of Edward and Arthur Jacobs in the fixed and depreciable assets purchased from Estelle Goodman is the cost to them, or $145,906.31. This conclusion is consistent and in conformity with the reasoning of and conclusion reached in H. R. Smith, 10 T.C. 398[2], affd. 173 Fed. (2d) 470, certiorari denied, 338 U.S. 818. The Commissioner has acquiesced in this Court's holding *187 in the H. R. Smith case. See, 1950 - 2 C.B. 4. See, also, Nathan Blum, 5 T.C. 702, and Carroll v. Commissioner, 70 Fed. (2d) 806. We are satisfied that petitioners have correctly stated the status ofGCM 10092, XI-1 Cum. Bull. 114 (1932). Although the above ruling was revoked in 1950 byGCM 26379, 1950-1 Cum. Bull. 58, the revocation was not made retroactive. See, also,Revenue Ruling 54-26, 1954-2 C.B. 18, which specifically makesRevenue Ruling 144 applicable only to changes in partnership interests which occur after January 1, 1954. The ruling which is applicable here, under the facts, isGCM 10092. The dissolution and termination of the Estelle Goodman-Nora Jacobs partnership, and the subsequent sale by Estelle Goodman of her interests in the assets of Lamar Laundry-Cleaners took place in early 1947. At that timeGCM 10092, supra, was in effect. The respondent apparently now agrees with the contentions of the petitioners and with their position under the cited authorities. The determinations *188 of the Commissioner are reversed. Decision will be entered for the petitioner in Docket No. 52464. Decisions will be entered under Rule 50 in the following Dockets: 48704, 52430, 52431, 52432, 52465. Footnotes
1. The following proceedings have been consolidated: Docket No. 48704, Milton H. Jacobs, Docket No. 52430, Nora S. Jacobs, Docket No. 52431, Elizabeth J. Ochs, Docket No. 52432, Edward S. Jacobs, Docket No. 52464, Edward S. Jacobs, Docket No. 52465, Edward S. Jacobs and Bettye R. Jacobs↩
2. The Uniform Partnership Act was enacted in 1917 in Tennessee. See Williams Tennessee Code (1934), sections 7841-7882↩.